# No. 16-2713

## In the United States Court of Appeals For the Federal Circuit

THE CHAMBERLAIN GROUP, INC.,
*Plaintiff – Appellee,*

v.

TECHTRONIC INDUSTRIES CO. LTD.,
ET TECHNOLOGY (WUXI) CO. LTD.,
*Defendants,*

TECHTRONIC INDUSTRIES NORTH AMERICA, INC.,
ONE WORLD TECHNOLOGIES, INC., OWT INDUSTRIES, INC.,
RYOBI TECHNOLOGIES, INC.,
*Defendants – Appellants.*

On Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division
Case No. 1:16-CV-06097, Hon. Harry D. Leinenweber

## REPLY BRIEF OF APPELLANTS

William R. Peterson
Nicholaus E. Floyd
MORGAN, LEWIS & BOCKIUS LLP
1000 Louisiana St., Ste. 4000
Houston, TX 77005
(713) 890-5188
(713) 890-5001 (Fax)

Julie S. Goldemberg
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
(215) 963-5095
(215) 963-5001 (Fax)

Jason C. White
Michael J. Abernathy
Sanjay K. Murthy
Nicholas A. Restauri
MORGAN, LEWIS & BOCKIUS LLP
77 W. Wacker Drive, Ste. 500
Chicago, IL 60601
(312) 324-1000
(312) 324-1001 (Fax)

***Counsel for Appellants***

# TABLE OF CONTENTS

**Page**

Table of Authorities .......... iii

Supplemental Statement of the Case .......... 1

Argument in Reply .......... 2

I. Chamberlain's Response Confirms that TTI Raised a Substantial Question of Invalidity. .......... 5

A. Chamberlain's response confirms the error in the district court's claim construction. .......... 6

1. Under the plain claim language, Menard anticipates the asserted claims of the '275 Patent. .......... 6

2. Chamberlain does not defend the district court's reasoning for its "self-aware" controller construction. .......... 9

3. Chamberlain has acknowledged that Claim 2, which depends from Claim 1, describes "the Menard approach." .......... 11

4. The district court's construction renders dependent Claim 5 inoperable. .......... 13

5. Chamberlain's new "potential" argument was not accepted by the district court and not raised below. .......... 14

B. Under the district court's "self-aware" controller construction, TTI raised substantial questions of anticipation and obviousness. .......... 16

1. Menard discloses a "self-aware" controller. .......... 16

2. Chamberlain's alternative arguments about Menard cannot save the preliminary injunction. .......... 19

**TABLE OF CONTENTS**
(continued)

**Page**

3. Alternatively, under the district court's claim construction, the asserted claims of the '275 Patent are obvious. ....20

4. Chamberlain's disparagement argument lacks merit. ....24

II. The District Court Erred in Finding that Chamberlain Established Irreparable Harm. ....25

A. The district court failed to find a causal nexus between any lost sales and the allegedly infringing feature. ....26

B. The district court failed to provide a reasoned analysis of why Chamberlain's injuries would be irreparable. ....27

Conclusion & Prayer for Relief ....29

Proof of Service ....30

Certificate of Compliance ....31

# TABLE OF AUTHORITIES

**Page(s)**

*AIA Eng'g Ltd. v. Magotteaux Intern. S/A*,
657 F.3d 1264 (Fed. Cir. 2011) ....................13

*Altana Pharma AG v. Teva Pharm. USA, Inc.*,
566 F.3d 999 (Fed. Cir. 2009) ....................5

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.*,
239 F.3d 1343 (Fed. Cir. 2001) ....................5

*Anderson v. U.S.F. Logistics (IMC), Inc.*,
274 F.3d 470 (7th Cir. 2001) ....................4

*Apple Inc. v. Samsung Elecs. Co., Ltd.*,
809 F.3d 633 (Fed. Cir. 2015) ....................26

*AstraZeneca LP v. Apotex, Inc.*,
633 F.3d 1042 (Fed. Cir. 2010) ....................5

*Automated Merch. Sys., Inc. v. Crane Co.*,
357 F. App'x 297 (Fed. Cir. 2009) ....................27

*Callaway Golf Co. v. Acushnet Co.*,
576 F.3d 1331 (Fed. Cir. 2009) ....................12

*Cardpool, Inc. v. Plastic Jungle, Inc.*,
817 F.3d 1316 (Fed. Cir. 2016) ....................12

*In re GPAC Inc.*,
57 F.3d 1573 (Fed. Cir. 1995) ....................23

*In re Huang*,
100 F.3d 135 (Fed. Cir. 1996) ....................23

*KSR Intern. Co. v. Teleflex Inc.*,
550 U.S. 398 (2007) ....................21

*Murata Mach. USA v. Daifuku Co., Ltd.*,
No. 2015-2094, 2016 WL 4073320 (Fed. Cir. Aug. 1, 2016) ....................2, 11

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Nutrition 21 v. United States*,
930 F.2d 867 (Fed. Cir. 1991) ....................25, 26, 27

*Pretty Punch Shoppettes, Inc. v. Hauk*,
844 F.2d 782 (Fed. Cir. 1988) ....................25

*Pullman-Standard v. Swint*,
456 U.S. 273 (1982)....................4

*SAS Inst., Inc. v. ComplementSoft, LLC*,
825 F.3d 1341 (Fed. Cir. 2016) ....................6

*Sprint/United Mgmt. Co. v. Mendelsohn*,
552 U.S. 379 (2008)....................3, 4

*Sud-Chemie, Inc. v. Multisorb Techs., Inc.*,
554 F.3d 1001 (Fed. Cir. 2009) ....................18, 22

*Teva Pharm. USA, Inc. v. Sandoz, Inc.*,
135 S. Ct. 831 (2015)....................6

*Transclean Corp. v. Jiffy Lube Int'l, Inc.*,
474 F.3d 1298 (Fed. Cir. 2007) ....................12

## SUPPLEMENTAL STATEMENT OF THE CASE

After TTI filed its opening brief, a motions panel denied TTI's motion to stay the preliminary injunction pending appeal. Judge O'Malley, joined by Judge Wallach, concluded—"without prejudicing the ultimate disposition of this case by a merits panel"—that "TTI has demonstrated likelihood of success on the merits" but that TTI had not established the other three factors. *The Chamberlain Group, Inc. v. Techtronic Indus. Co.*, Ltd, No. 16-2713, Dkt. No. 42 at 2 (Fed. Cir. Nov. 1, 2016).

Judge Dyk dissented and would have granted the stay of the preliminary injunction pending this appeal.

This Court granted TTI's motion for expedited consideration of the appeal. *Id.* at Dkt. No. 38 (Fed. Cir. Oct. 19, 2016). Pursuant to that order, TTI has filed this Reply Brief on November 14, only five days after Chamberlain filed its Appellee's Brief, and this case "shall be placed on the next available oral argument calendar." *Id.*

In response to TTI's motion to stay, Chamberlain explained the importance of "Black Friday," the "make-or-break retail holiday" for the garage door opener market. *Id.* at Dkt. No. 30 at 17. TTI agrees and respectfully requests, if possible, that the case be decided and the preliminary injunction be vacated before Black Friday (November 25).

## ARGUMENT IN REPLY

Chamberlain has no serious answer to TTI's explanation of the district court's errors in claim construction. As TTI detailed in its opening brief, the district court provided two rationales for its "self-aware" controller construction: (1) a misunderstanding of the relationship between dependent and independent claims; and (2) a misreading of the prosecution history. Appellants' Br. 25-29. The district court's reasoning is indefensible, and Chamberlain does not defend it.

Because the district court based its ruling on an erroneous view of the law of dependent claims and a clearly erroneous assessment of the prosecution history, it "necessarily abuse[d] its discretion" in granting the preliminary injunction. *Murata Mach. USA v. Daifuku Co., Ltd.*, No. 2015-2094, 2016 WL 4073320, at *4 (Fed. Cir. Aug. 1, 2016).

The plain text of the claims says nothing about "external sensors" or about the controller being "self-aware." The claim requires only "a controller having a plurality of potential operational status conditions." '275 Patent, Claim 1. And Chamberlain now admits that controllers with sensors (which are not "self-aware") can have operational status conditions. Appellee's Br. 26 n.7.

Chamberlain's only remaining claim construction argument—raised for the first time in its Appellee's Brief—is that only "self-aware" controllers can have "**potential** operational status conditions." Appellee's Br. 26 & n.7. This new

argument is illogical, unsupported by any evidence or testimony, and was never raised before the district court. It cannot save the district court's erroneous claim construction, and under a correct claim construction, TTI raised a substantial question of invalidity.

In addition, even under the district court's claim construction, TTI raised substantial questions of anticipation and obviousness.

Independently, the district court failed to make the irreparable harm findings necessary to support a preliminary injunction. Most obviously, the district court failed to find a nexus between the allegedly infringing features of TTI's product and any lost sales by Chamberlain.

Unable to defend the district court's findings, Chamberlain asks this Court to affirm the preliminary injunction on alternative grounds of what the district court could have found (but did not). *See, e.g.*, Appellee's Br. 48 (arguing that a "virtual tsunami" of evidence could have allowed the district court to find a connection between the infringing feature and lost sales).

The Supreme Court has rejected Chamberlain's approach. When a district court fails to make necessary findings or abuses its discretion, the court of appeals cannot decide facts or exercise discretion in the first instance. *See Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 387 (2008) ("Rather than assess the relevance of the evidence itself and conduct its own balancing of its probative

value and potential prejudicial effect, the Court of Appeals should have allowed the District Court to make these determinations in the first instance, explicitly and on the record.”). More than three decades ago, the Supreme Court called this principle “elementary.” *Pullman-Standard v. Swint*, 456 U.S. 273, 292 (1982) (discussing authorities).

Chamberlain relies heavily on *Anderson v. U.S.F. Logistics (IMC), Inc.*, 274 F.3d 470, 478 (7th Cir. 2001). But *Anderson* appears to involve the exception to *Sprint*’s rule: “The only exception to this rule is when ‘the record permits only one resolution of the factual issue.’” *Sprint*, 552 U.S. at 387 n.3 (quoting *Pullman–Standard*, 456 U.S. at 292). Chamberlain has not argued that it has satisfied this standard. And to the extent that *Anderson* truly holds that this Court should resolve disputed facts rather than remanding to the district court, it was overruled by the Supreme Court in *Sprint*.

Chamberlain cannot reinvent its case on appeal. The preliminary injunction must stand or fall with the district court’s findings and the district court’s exercise of discretion. Because the district court abused its discretion in granting the preliminary injunction and failed to make the necessary findings to support it, the preliminary injunction must be vacated.

## I. Chamberlain's Response Confirms that TTI Raised a Substantial Question of Invalidity.

Chamberlain's response confirms the existence of substantial questions of invalidity. Chamberlain thus failed to establish a "likelihood of success on the merits" necessary for a preliminary injunction. *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001).

To show a substantial question of invalidity, TTI's burden at this stage is lower than its burden to prove invalidity at trial—it is enough for TTI to show the claims' "vulnerability" to invalidity arguments. *Altana Pharma AG v. Teva Pharm. USA, Inc.*, 566 F.3d 999, 1006 (Fed. Cir. 2009) (quoting *Amazon.com*, 239 F.3d at 1359). That is, TTI need only "asser[t] an . . . invalidity defense that [Chamberlain] has not shown lacks substantial merit." *AstraZeneca LP v. Apotex, Inc.*, 633 F.3d 1042, 1050 (Fed. Cir. 2010) (citation omitted). Unable to satisfy these standards, Chamberlain hides from them. The phrases "substantial merit" and "vulnerability" are absent from Chamberlain's brief.

TTI contends that it has established, conclusively, the invalidity of the asserted claims. But at a minimum, TTI has demonstrated that its invalidity defenses have substantial merit. Nothing more is required to vacate the preliminary injunction.

### A. Chamberlain's response confirms the error in the district court's claim construction.

The district court rejected TTI's argument that Menard anticipates Claims 1 and 5 of the '275 Patent for only one reason: Instead of construing Claim 1 to encompass any "controller having . . . potential operational status conditions" (the plain language), the district court construed Claim 1 to encompass only "self-aware" controllers, which have operational status conditions not determined by external sensors. Appellants' Br. 10-14.

This Court reviews the district court's construction of the claims *de novo*, *SAS Inst., Inc. v. ComplementSoft, LLC*, 825 F.3d 1341, 1347 (Fed. Cir. 2016), and reviews subsidiary factual findings underlying the claim construction for clear error. *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 841 (2015).

The district court's claim construction was erroneous. Under the plain language of the claims, TTI raised a substantial question of invalidity, as Menard anticipates the asserted claims of '275 Patent.

#### 1. Under the plain claim language, Menard anticipates the asserted claims of the '275 Patent.

The relevant language of Claim 1 requires only a "controller having a plurality of potential operational status conditions." '275 Patent, Claim 1. Claim 1 says nothing about "external sensors;" nor does Claim 1 restrict how the controller must determine its operational status condition. Under this plain language, Menard

anticipates Claim 1. *See* Appellants' Br. 20 (explaining that Menard discloses a processor with a status condition that may be defined by different operating states).

The district court rejected this argument because Menard "relied upon external sensors" to determine its status conditions. Appx10.[1] The district court construed Claim 1 to be limited to "self-aware" controllers, which it defined as controllers that "d[o] not rely upon any external sensors to obtain the status conditions." Appx7.

The specification does not support the district court's construction. In fact, the specification refutes it. The specification explains that controllers can obtain their conditions from status condition sensors:

> Generally speaking, pursuant to these various embodiments, a movable barrier operator has a controller having a plurality of potential operational status conditions, a movable barrier interface that operably couples to the controller, and a wireless status condition data transmitter that is operably coupled to the controller as well. If desired, **one or more status condition sensors can be utilized** to sense one or more predetermined conditions and **to provide corresponding indicia to the controller**.

'275 Patent, 2:55-64 (emphasis added). The district court's construction—in which sensors cannot be used to determine the status conditions—cannot be squared with the specification.

[1] As discussed below, the district court erred in concluding that Menard relied on external sensors.

The specification later confirms that being "self-aware" is just one possible way for a controller to have information about its status condition. Column 4 describes: "In a typical embodiment, the controller 11 will have a plurality of potential operational status conditions." '275 Patent, 4:5-6. In the same column, the specification explains multiple ways for the controller to acquire information about these operational status conditions: "Depending on the needs of the setting, the controller 11 can be self-aware **of such operational status conditions** . . . **or** . . . can be provided with externally developed information regarding **the condition**." '275 Patent, 4:52-57 (emphasis added).

Chamberlain's expert, Dr. Rhyne, admitted that a controller can "ha[ve] operational status conditions" without being "self-aware." Appx6124. That is, non-self-aware controllers (like the district court believed Menard to be) can "ha[ve] operational status conditions." Appx6124. Chamberlain now agrees. Appellee's Br. 26 n.7.

According to Dr. Rhyne, the difference between "self-aware" controllers and controllers with sensors is not "having the conditions" but rather, "where did [the controller] determine what the states were of those conditions." Appx6124. But Claim 1 does not limit where (or how) a controller must determine the states of its operational status conditions.

The district court erred in construing Claim 1 to be limited to "self-aware" controllers, and as detailed in TTI's opening brief, under a correct construction, Menard anticipates Claim 1 of the '275 Patent. Appellants' Br. 19-23.

**2. Chamberlain does not defend the district court's reasoning for its "self-aware" controller construction.**

The district court offered two rationales for imposing the "self-aware" controller limitation. First, the district court misunderstood the relationship between independent Claim 1 and dependent Claim 2. *See* Appx8-9 (construing the independent claim to "eschew" the dependent claim). Second, the district court misread the prosecution history. *See* Appx10 (incorrectly stating that reliance on external sensors was "the only way to distinguish the '275 patent from the prior art"). Chamberlain cannot and does not defend this reasoning.

**a. Chamberlain does not defend the district court's "claim differentiation" reasoning.**

The district court correctly noted that Claim 2, which depends from Claim 1, "distinguishes itself from Claim 1 by adding" a condition status sensor. Appx8. The district court then incorrectly reasoned that "the only reasonable way to reconcile the difference between Claim 1 and Claim 2 is that Claim 1 **eschews** condition sensors in favor of a controller that does not rely on external sensors." Appx8 (emphasis added). As TTI explained, this analysis fundamentally confuses the relationship of independent and dependent claims. Appellants' Br. 25-28.

Chamberlain correctly abandons the district court's reasoning. According to Chamberlain, "[t]he court merely acknowledged the differences in the claim language." Appellee's Br. 30. Chamberlain does not defend the fallacy (on which the district court's claim construction turned) that independent Claim 1 must "eschew" the sensors covered by dependent Claim 2. And Chamberlain's lengthy discussion of Claim 3 is irrelevant. Appellee's Br. 30-31. The district court's opinion did not mention or discuss Claim 3, and its misunderstanding of the relationship between dependent and independent claims goes undefended by Chamberlain.[2]

#### b. Chamberlain admits that the district court misread the prosecution history.

Nor does Chamberlain defend the district court's misreading of the prosecution history. According to the district court, "**the only way** to distinguish the '275 patent from the prior art was for the examiner to conclude that the '275 patent does not rely on external sensors." Appx10 (emphasis added).

Chamberlain admits that the district court was wrong, acknowledging that external sensors are not "the only way" to distinguish the '275 Patent from the

[2] Chamberlain bears responsibility for this misunderstanding. Its briefing to the district court characterized independent Claim 1 and dependent Claim 2 as alternatives. *See* Appx3091 (characterizing Claim 1 and Claim 2 as two different "scenario[s]").

prior art, as the applicants "amended the claims to recite [a new limitation] and distinguished [the prior art] on this secondary basis." Appellee's Br. 30.

Chamberlain thus abandons the district court's claim differentiation reasoning and admits that the district court misread the prosecution history. In light of these errors, the district court necessarily abused its discretion in granting a preliminary injunction. *E.g., Murata Mach. USA v. Daifuku Co., Ltd.*, No. 2015-2094, 2016 WL 4073320, at *4 (Fed. Cir. Aug. 1, 2016) ("A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence."). This Court can vacate the preliminary injunction on this basis alone.

#### 3. Chamberlain has acknowledged that Claim 2, which depends from Claim 1, describes "the Menard approach."

Moreover, Chamberlain has acknowledged that Claim 2, which depends from Claim 1, describes "the Menard approach." Appx3091. Chamberlain now tries to retreat from these representations. *See* Appellee's Br. n.9 (characterizing Menard as "similar" to Claim 2).

But Chamberlain's arguments to the district court were unequivocal and unambiguous: "The '275 patent includes clear statements illustrating the difference between **the Menard approach** and the '275 claim 1 approach . . . . The '275 patent's claim 1 recites the first scenario, . . . and the **'275 patent's claim 2** corresponds to the second scenario." Appx3091 (emphasis added). In its response

to TTI's motion to stay the preliminary injunction in this Court, Chamberlain asserted that Claim 1 and Claim 2 were alternatives, arguing that the specification describes "two embodiments: one (like Claim 1) where a controller itself has the potential operational status conditions and one (like TTI's Menard prior art) where a controller forwards information received from external sensors." *The Chamberlain Group, Inc. v. Techtronic Indus. Co., Ltd*, No. 16-2713, Dkt. No. 25 at 5 (Fed. Cir. Oct. 5, 2016).

Judicial estoppel prevents Chamberlain from abandoning its position that Claim 2 describes "the Menard approach." *E.g., Cardpool, Inc. v. Plastic Jungle, Inc.*, 817 F.3d 1316, 1323 (Fed. Cir. 2016) ("The doctrine of judicial estoppel is that where a party successfully urges a particular position in a legal proceeding, it is estopped from taking a contrary position in a subsequent proceeding where its interests have changed."); *Transclean Corp. v. Jiffy Lube Int'l, Inc*., 474 F.3d 1298, 1307 (Fed. Cir. 2007) ("The doctrine of judicial estoppel prohibits a party from taking inconsistent positions in the same or related litigation.").

Because Claim 2 depends from Claim 1, if Menard anticipates Claim 2, then Menard necessarily anticipates Claim 1. *See Callaway Golf Co. v. Acushnet Co.*, 576 F.3d 1331, 1344 (Fed. Cir. 2009) ("A broader independent claim cannot be nonobvious where a dependent claim stemming from that independent claim is invalid for obviousness.") (citation omitted). If, as Chamberlain argued to the

district court, Claim 2 constitutes "the Menard approach," then Menard anticipates both dependent Claim 2 and independent Claim 1.

#### 4. The district court's construction renders dependent Claim 5 inoperable.

The district court acknowledged that the "self-aware" controller construction renders Claim 5 inoperable under present technology: "[T]he author appeared to . . . claim such states which **might through future invention** be able to be sensed by the controller without external sensors." Appx9 (emphasis added).

This result strongly suggests that the district court erred in claim construction. *Cf. AIA Eng'g Ltd. v. Magotteaux Intern. S/A*, 657 F.3d 1264, 1278 (Fed. Cir. 2011) (rejecting an interpretation that "requires a material that . . . is physically impossible to produce"). "[A] construction that renders the claimed invention inoperable should be viewed with extreme skepticism." *Id.* at 1278.

Chamberlain does not dispute the legal principle that it would be error to construe Claim 5 to be inoperable. Appellee's Br. 32. Instead, Chamberlain quarrels with the district court's factual determination that Claim 5 requires "future invention" to work. Appellee's Br. 32. This is no answer—Chamberlain cannot (and does not attempt to) show clear error in the district court's finding that Claim 5 is inoperable, given testimony by its expert that detecting vehicles requires a sensor. Appx6131. And the district court was well within its authority as a

factfinder to reject Dr. Rhyne's (facially implausible) rebuttal testimony speculating that objects could be "detected" without sensors.

#### 5. Chamberlain's new "potential" argument was not accepted by the district court and not raised below.

Unable to defend the district court's reasoning, Chamberlain proffers an alternative argument, never made below, which turns on the word "potential." The basis of Chamberlain's new argument is unclear, but as best TTI understands, Chamberlain argues that controllers with sensors can have "operational status conditions" but cannot have "potential operating status conditions." Appellee's Br. 26 & n.7.

Chamberlain never made this "potential" argument below nor suggested that the word "potential" played any significant role in claim construction. The district court's opinion uses the word "potential" only twice: once in quoting the claim language, Appx5, and once when referring to "potential direct infringement," Appx12. Nor does the specification distinguish between "operational status conditions" and "potential operational status conditions." Rather, the specification's examples of "potential operational status conditions" are simply various operational status conditions that the controller might have. *See* '275 Patent, 4:9-44 (listing "potential operational status conditions" such as "moving the movable barrier" and "detecting a likely proximal presence of a human").

Chamberlain offers no reasoning or support beyond the conclusory statement that "the word 'potential' . . . is commonly used to refer to a latent or existing quality of something, here a controller, that has not yet been realized." Appellee's Br. 26. And no logic or evidence supports Chamberlain's emphasis on the word "potential." If (as Chamberlain concedes) a non-self-aware controller can have an operational status condition, then as a matter of logic, it also has the potential to have different operational status conditions, *i.e.*, "a plurality of potential operational status conditions." '275 Patent, Claim 1. The word "potential" cannot save the district court's "self-aware" construction.

Nor is Chamberlain correct that "the patent itself used the term 'self-aware' as a shorthand for" the phrase "having a plurality of potential operational status conditions." Appellee's Br. 27. As discussed above, the specification uses "self-aware" to describe one method for a controller to have information about its operational status condition. '275 Patent, 4:52-57. The patent explains that sensors are another method. *Id.* Claim 1 covers both.

Chamberlain also incorrectly asserts that the term "self-aware" is "shorthand" that "the parties . . . used . . . for a requirement derived from the plain language of the claim." Appellee's Br. 17. Chamberlain provides no citation for its assertion that TTI has used this "shorthand" for the claim language (as opposed to shorthand for the district court's erroneous construction). TTI denies—and

always has denied—that the plain claim language refers, either directly or indirectly, to a "self-aware" controller.

The district court erred in its claim construction. Correctly construed, Menard anticipates the '275 Patent. Appellants' Br. 19-31. TTI raised a substantial question of invalidity, and the preliminary injunction must be vacated.

### B. Under the district court's "self-aware" controller construction, TTI raised substantial questions of anticipation and obviousness.

Even under the district court's "self-aware" controller construction, TTI raised substantial questions of invalidity, which require vacating the preliminary injunction.

As a threshold matter, Chamberlain's waiver arguments are meritless. Appellee's Br. 34, 45. Chamberlain first revealed its "self-aware" controller construction in its reply in support of the preliminary injunction motion, four days before the preliminary injunction hearing and after TTI had filed its response to Chamberlain's motion. Appellants' Br. 10-11. TTI then responded to Chamberlain's new contentions at its first opportunity: the preliminary injunction hearing. TTI cannot be faulted for not anticipating the construction that Chamberlain first unveiled after TTI's response.

#### 1. Menard discloses a "self-aware" controller.

In its opening brief, TTI explained how Chamberlain's expert, Dr. Rhyne, misunderstood a key portion of Menard. Appellants' Br. 33-34. A diagram in

Menard includes the step "receive door position." Appx1168. Dr. Rhyne thought this meant that the door position is received **by the controller** from a sensor. Appx6524. In truth, "door position is received **by the user**" from the controller. Appx1174 at ¶69 (emphasis added). Dr. Rhyne's misunderstanding of Menard's disclosure vitiates his testimony about Menard.

It is disappointing that Chamberlain—without acknowledging or responding to the misunderstanding identified in TTI's brief—would continue to rely on Dr. Rhyne's mistaken testimony. *See* Appellee's Br. 37 (quoting Appx6524). Both Dr. Rhyne's testimony about Menard and Chamberlain's arguments based on it must be disregarded.

Menard specifically discloses two internally determined states: (1) door position, and (2) power status. Chamberlain's response to "door position" is to deny its expert's testimony. *See* Appellee's Br. 42-43 (denying that Dr. Rhyne testified that garage door openers that use a wall controller are "self-aware"). Yet this was precisely Dr. Rhyne's testimony. Here is what the district court told Rhyne: "I have a garage door opener. You push a button and it closes. When you push the same button, it opens." Appx6126. Based solely on this information, Dr. Rhyne described this garage door opener as "a good example" of a garage door opener with an internally determined state. Appx6126. Chamberlain has good reason to dislike this testimony, but denying its existence is no answer.

Menard discloses precisely the same facts: "[W]hen the button on switch 65 is pressed, power unit 15 drives door 40 to an open position if door 40 closed, and to a closed position if open." Appx1169 at ¶6. Dr. Rhyne's testimony confirms that to one of ordinary skill in the art, Menard's description discloses "a good example" of an internally determined state. Appx6126.

Chamberlain's response to the "power status" described in Menard reveals its hyper-technical approach to anticipation. Menard describes a controller sending a signal to indicate its power status; *i.e.*, whether the controller has battery or line power. Appx1165. Menard does not mention "sensors" used to detect whether the controller has power, and Menard's diagram shows line power connected directly to the controller, not through a sensor. Appx1165 at Fig. 2.

Chamberlain says that this disclosure cannot anticipate the '275 Patent because Menard's silence regarding externals sensors "does not prove that external sensors were not used." Appellee's Br. 43. That is, according to Chamberlain, a reference must expressly state "without using external sensors" to anticipate a "self-aware" controller. Not so. Menard discloses transmitting power status without mentioning sensors; Menard therefore discloses the district court's "without external sensor limitation" claim construction. *See Sud-Chemie, Inc. v. Multisorb Techs., Inc.*, 554 F.3d 1001, 1004 (Fed. Cir. 2009) (holding that silence in the cited prior art constitutes a disclosure of the negative limitation).

Menard thus anticipates the asserted claims of the ’275 Patent, even under the district court’s “self-aware” controller construction.

**2. Chamberlain’s alternative arguments about Menard cannot save the preliminary injunction.**

This Court should not consider Chamberlain’s alleged “additional reasons as to why the Menard reference does not invalidate the claims.” Appellee’s Br. 39. The sole reason that the district court rejected TTI’s invalidity arguments was the “self-aware” controller: “Because none of the prior art . . . taught the concept of the ‘self-aware’ controller, TTI has not raised a substantial question as to invalidity.” Appx10 (internal quotation marks omitted). If the district court committed legal or factual error, it abused its discretion in granting the preliminary injunction, and this Court should not consider Chamberlain’s alternative arguments. *See supra* pp. 3-4.

In any event, Chamberlain’s arguments are meritless. Chamberlain admits that Menard teaches transmitting both door position and light information. Appellee’s Br. 39. Chamberlain’s counsel represented to the district court that this information satisfied the “defined by a plurality of operating states” limitation. *See* Appx6592 (“So the status condition for that is the garage door, and open and close are the two states of that. And then another status condition might be the lights, and that might be on or off.”).

Further, Chamberlain’s assertion (at Appellee’s Br. 40) that TTI’s expert “withdrew his Bluetooth opinion” is false. At the hearing, Dr. Madisetti testified

that Bluetooth satisfied the identifier limitation. Appx6367-6369. Indeed, Dr. Madisetti specifically denied "recant[ing]" this opinion at his deposition and explained that Chamberlain was misinterpreting his deposition testimony. Appx6367-6368.

**3. Alternatively, under the district court's claim construction, the asserted claims of the '275 Patent are obvious.**

Alternatively, TTI raised a substantial question of invalidity based on the obviousness of the asserted claims. Chamberlain cites no support for its suggestion that it invented the use of "self-aware" controllers with garage door openers. *E.g.*, Appellee's Br. 2. The record instead shows that using a "self-aware" controller was neither novel nor inventive. To the contrary, it is the typical way that garage door openers were made. Menard described this as the state of the garage door opener art in 2002, one year before the '275 Patent's alleged priority date. Appx1169 at ¶6. And Chamberlain's expert testified that the ordinary garage door opener is "a good example" of a "self-aware" controller with an internally determined state. Appx6126. At the time of the purported invention, using a garage door opener with a "self-aware" controller was obvious—it was how garage door openers traditionally were made.

**a. The use of a "self-aware" controller with Menard is obvious.**

Even if Menard does not anticipate the use of a "self-aware" controller, the use of such a controller is obvious. The '275 patent's specification says the controller is "well understood in the art," '275 Patent, 3:36, and there is no special programming or novel algorithm mentioned anywhere in the patent.

Chamberlain attacks TTI for "fail[ing] to identify any reason prompting a person of skill to combine prior art the features [sic]." Appellee's Br. 44. But *KSR* teaches: "[W]hen a patent claims a structure already known in the prior art that is altered by the mere substitution of one element for another known in the field, the combination must do more than yield a predictable result." *KSR Intern. Co. v. Teleflex Inc.*, 550 U.S. 398, 416 (2007). As discussed above, "self-aware" garage door openers were well-known in the art prior to 2003.

Chamberlain has not suggested that combining a "self-aware" controller, which was well-known in the field, with Menard did anything more than yield a predictable result. Even if Menard did not anticipate a "self-aware" controller, using a "self-aware" controller was obvious.

Chamberlain's complaints about preservation are meritless. *See* Appellee's Br. 21, 36, 43-44 (claiming that this argument "was never raised with the district court"). TTI made this argument at the hearing. *See* Appx6358-6359; Appx6369-6371 (testimony of TTI's expert that the asserted claims of the '275 Patent are

obvious both under TTI's proposed construction and under Chamberlain's "self-aware" construction.").

**b. Tazumi discloses a "self-aware" controller and renders the asserted claims of the '275 Patent obvious.**

The asserted claims are also obvious in light of Tazumi, which discloses all of the elements of Claim 1 except for wireless transmission. TTI explained that replacing wired transmission with wireless was obvious. Appellants' Br. 38-42.

Chamberlain does not dispute the obviousness of wireless transmission but instead argues that Tazumi required external sensors (and thus does not use a "self-aware" controller). Appellee's Br. 45-46. Chamberlain relies on its expert's testimony, but on cross-examination, Dr. Rhyne admitted that he did not actually understand how Tazumi worked. *See* Appx6568 ("I don't know for sure how they detect it."); Appx6569 ("I don't know how that information is derived."). Given this confession of ignorance by Dr. Rhyne, it was clear error for the district court to credit his earlier testimony that Tazumi required external sensors.

The only witness who understood Tazumi was TTI's expert, Dr. Madisetti, who testified: "[Tazumi] doesn't rely on any sensors to provide operating param[eter] information and maintenance information, et cetera, for the movable barrier and its controller." Appx6375; *see also Sud-Chemie, Inc.*, 554 F.3d at 1004 (suggesting that disclosure without mentioning sensors should satisfy the limitation of without sensors).

Accordingly, even under the district court's construction, in light of Menard and Tazumi, TTI has raised substantial questions of invalidity based on anticipation and obviousness.

**c. Chamberlain's secondary considerations arguments do not support a finding of non-obviousness.**

The district court did not rely on secondary considerations in rejecting TTI's obviousness argument (or even address the argument at all), and secondary considerations cannot factor into an anticipation analysis. For the reasons discussed above, *see supra* pp. 3-4, this Court cannot affirm the preliminary injunction on the alternative grounds of secondary considerations.

Moreover, Chamberlain's secondary consideration evidence is irrelevant, as Chamberlain focuses on the success of the MyQ® technology—its smartphone application. But the asserted claims of the '275 Patent do not cover the MyQ® technology, nor do they cover a mobile application or a smartphone. Appx6375. There is also no nexus between Chamberlain's evidence and the claimed features of the invention. *See In re Huang*, 100 F.3d 135, 140 (Fed. Cir. 1996) (holding that the proponent of secondary considerations must offer proof "that the sales were a direct result of the unique characteristics of the claimed invention"); *In re GPAC Inc.*, 57 F.3d 1573, 1580 (Fed. Cir. 1995) ("For objective [evidence of secondary considerations] to be accorded substantial weight, its proponent must establish a nexus between the evidence and the merits of the claimed invention.").

#### 4. Chamberlain's disparagement argument lacks merit.

Finally, Chamberlain's half-hearted suggestion that the '275 Patent disparaged external sensors is meritless. *See* Appellee's Br. 8 (claiming that the '275 Patent criticized "the prior art external sensor approach"). Chamberlain mischaracterizes the specification. The quoted portion of the specification is not criticizing the use of **sensors** but rather criticizing the use of **wired connections**. *See, e.g.*, '275 Patent at 1:56-62 (noting the disadvantages of "a physical interface," which "can represent undesired additional cost"); *id.* at 2:1-3 (noting "undesired exposed wiring and/or an undesired increase in installation time."). In fact, the specification describes the use of sensors, *see* '275 Patent, 4:52-57 ("the controller 11 can be provided with externally developed information regarding the condition"), and dependent Claim 2 specifically claims the use of sensors.

* * * * *

Under a correct claim construction, Menard anticipates the '275 Patent. But even under the district court's incorrect construction—which adds the "self-aware" requirement—the asserted claims of the '275 Patent are anticipated or obvious. Chamberlain has not shown that TTI's invalidity defenses lack substantial merit, so the preliminary injunction must be vacated.

## II. The District Court Erred in Finding that Chamberlain Established Irreparable Harm.

The district court erred in concluding that Chamberlain established that it would suffer irreparable harm. This error provides an independent ground to vacate the preliminary injunction.

The district court did not make the necessary factual findings in support of a preliminary injunction. Most obviously, the district court did not find any nexus between the allegedly infringing features and Chamberlain's alleged lost sales. This is particularly important, given Chamberlain's acknowledgement of the numerous ways in TTI's product is superior. Appellants' Br. 44-45. And even crediting the district court's findings of lost sales, lost market share, and price erosion, the district court failed to include the requisite "reasoned analysis" of why money damages would be inadequate. *Nutrition 21 v. United States*, 930 F.2d 867, 871 (Fed. Cir. 1991).

Unable to defend the preliminary injunction under the district court's findings, Chamberlain spends much of its brief talking about the evidence before the district court and what the district court purportedly **could have** found. *E.g.*, Appellee's Br. 56 (noting that the district court "also heard evidence" about other types of harm). But the preliminary injunction must stand or fall on what the district court actually found. Without "sufficient factual findings" on irreparable harm, the preliminary injunction must be vacated. *Pretty Punch Shoppettes, Inc. v.*

*Hauk*, 844 F.2d 782, 784 (Fed. Cir. 1988); *see also Nutrition 21*, 930 F.2d at 869 ("Sufficient factual findings on the material issues are necessary to allow this court to have a basis for meaningful review.").

**A. The district court failed to find a causal nexus between any lost sales and the allegedly infringing feature.**

The district court did not find a causal nexus between any lost sales and the allegedly infringing feature. A plaintiff seeking to show irreparable harm due to lost sales must "show a causal nexus between the infringement and the lost sales." *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 809 F.3d 633, 641 (Fed. Cir. 2015). A district court must find "'some connection' between the patented features and the demand for the infringing products." *Id.*

The district court made no such finding, and Chamberlain's arguments that the evidence would have permitted the district court to make this finding (Appellee's Br. 48-49) are irrelevant. The preliminary injunction must rest on findings from the district court, not what the district court might have found. With no finding of a causal nexus between the allegedly infringing feature and Chamberlain's lost sales, the preliminary injunction must be vacated.

Moreover, the district court was also required to consider what other factors contributed to the lost sales: "[T]he fact that the infringing features are not the only cause of the lost sales may well lessen the weight of any alleged irreparable harm." *Apple*, 809 F.3d at 641-42. There are no findings about the degree to which any

other features caused the lost sales. The district court's findings on lost sales are thus doubly deficient.

**B. The district court failed to provide a reasoned analysis of why Chamberlain's injuries would be irreparable.**

The district court also failed to make findings about why Chamberlain's injuries would be irreparable by money damages. The district court found "a substantial risk" of "loss of market share, profits, and price erosion," but with no further analysis, the court "thus f[ound]" that Chamberlain would suffer irreparable harm. Appx16. This was error.

While Chamberlain details why it believes that these injuries would be irreparable, *see* Appellee's Br. 54-57, the district court did not make these findings. Instead, the district court leapt directly from injuries to a conclusion of irreparable harm. But lost market share does not necessarily (or even presumptively) show irreparable harm. *E.g.¸ Nutrition 21 v. United States*, 930 F.2d 867, 871 (Fed. Cir. 1991); *Automated Merch. Sys., Inc. v. Crane Co*., 357 F. App'x 297, 301 (Fed. Cir. 2009). "[T]here is no presumption that money damages will be inadequate . . . . Some evidence and reasoned analysis for that inadequacy should be proffered." *Nutrition 21*, 930 F.2d at 872. The district court failed to provide that reasoned analysis, and Chamberlain's arguments are no substitute.

Chamberlain makes much of The Home Depot dropping the price of Chamberlain's product by $40 in May (despite no evidence that the Ryobi GD200

caused this price drop and despite The Home Depot later increasing the price of Chamberlain's product by $16 in August). Appellee's Br. 54. Chamberlain suggests that this constitutes irreparable harm because "[r]equiring purchasers to pay higher prices after years of paying lower prices to infringers is not a reliable business option." Appellee's Br. 55 (citing *Polymer Techs., Inc. v. Bridwell*, 103 F.3d 970, 976 (Fed. Cir. 1996)). But Chamberlain describes the market as "inelastic, typically limited to consumers replacing a broken garage door opener or to new home construction." Appellee's Br. 51. Consumers, therefore, will not immediately become accustomed to "years of paying lower prices" in the absence of an injunction. And the evidence established that garage door opener prices fluctuate, so there is no reason to believe that lower prices will persist for long. Appx6464.

The district court's irreparable harm findings do not support a preliminary injunction.

## CONCLUSION & PRAYER FOR RELIEF

Chamberlain demonstrated neither a likelihood of success on the merits nor irreparable harm. The erroneous claim construction should be corrected, and the preliminary injunction should be vacated.

Dated: November 14, 2016

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

By: */s/ Jason C. White*

Jason C. White
Michael J. Abernathy
Sanjay K. Murthy
Nicholas A. Restauri
77 W. Wacker Drive, Ste. 500
Chicago, IL 60601

William R. Peterson
Nicholaus E. Floyd
1000 Louisiana St., Ste. 4000
Houston, TX 77005

Julie S. Goldemberg
1701 Market Street
Philadelphia, PA 19103

***Counsel for Appellants, Techtronic Industries North America, Inc., One World Technologies Inc., OWT Industries, Inc., and Ryobi Technologies, Inc.***

## PROOF OF SERVICE

I hereby certify that on November 14, 2016, I electronically transmitted this Reply Brief of Appellants to the Clerk of the Court using the Court's CM/ECF system. I further certify that counsel of record for Appellee are being served with an electronic copy of this Brief by email, as follows:

***Counsel for Appellee***

*Via Email*
Maria Elena Stiteler
stiteler@fr.com
FISH & RICHARDSON P.C.
60 S. Sixth Street
Minneapolis, MN 55402
Telephone: (612) 335-5070
Facsimile: (612) 288-9696

*Via Email*
Nicole L. Little
nlittle@fitcheven.com
FITCH, EVEN, TABIN & FLANNERY LLP
120 South LaSalle Street, Suite 1600
Chicago, Illinois 60603
Telephone: (312) 577-7000
Facsimile: (312) 577-7007

*Via Email*
Katherine Vidal
vidal@fr.com
Matthew McCullough
mccullough@fr.com
FISH & RICHARDSON P.C.
500 Arguello Street., Suite 500
Redwood City, California 94063
Telephone: (650) 839-5070
Facsimile: (650) 839-5071

*Via Email*
Benjamin C. Elacqua
elacqua@fr.com
Michael Rueckheim
rueckheim@fr.com
FISH & RICHARDSON PC
1221 McKinney Street, Suite 2800
Houston, Texas 77010
Telephone: (713) 654-5300
Facsimile: (713) 652-0109

*/s/ Jason C. White*
Jason C. White

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B) because this brief contains 6,059 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in Times New Roman 14 point font.

*/s/ Jason C. White*
Jason C. White
*Counsel for Appellants, Techtronic Industries North America, Inc., One World Technologies Inc., OWT Industries, Inc., and Ryobi Technologies, Inc.*

Dated: November 14, 2016